UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RYAN JOSEPH MAXSTADT,<br><br>  Petitioner,<br><br>v.<br><br>JASON PICKETT,<br><br>  Respondent. | Lead Case No.  5:20-cv-08059-EJD<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: ECF No. 1 |

In 2018, following convictions on five criminal charges in Mendocino County, a state trial court sentenced Petitioner Ryan Maxstadt to a term of 38 years and eight months to life. Maxstadt now challenges two of his convictions by petitioning this Court for a writ of habeas corpus under 28 U.S.C. § 2254. Petition, ECF No. 1. Maxstadt raises four claims in his petition: (1) ineffective assistance of trial counsel; (2) lack of sufficient evidence; (3) defective jury instructions; and (4) actual innocence. After considering the parties' submissions and the record in this matter, the Court DENIES Maxstadt's petition.

**I.  BACKGROUND**

  **A.  Statement of Facts[1]**

In late 2016, police in Ukiah, California were investigating a string of burglaries that they suspected were linked to a black Kia Sportage. On December 20, 2016, a local officer noticed the

---

[1] These facts are taken from the California Court of Appeal opinion in Maxstadt's direct appeal. *People v. Maxstadt*, No. A153888, 2019 WL 1970162 (Cal. Ct. App. May 3, 2019); *see also* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct.").

Case No.: 5:20-cv-08059-EJD
ORDER DEN. PETITION    1

1   suspected Kia in a convenience store parking lot and attempted to use his patrol vehicle to block
2   the Kia in that lot. However, the Kia's driver—later identified as Maxstadt—abruptly pulled out
3   of the parking lot, initiating a high-speed chase that the California Highway Patrol ("CHP") later
4   joined. During the chase, one of the participating CHP officers saw Maxstadt reach out of the
5   Kia's window with what appeared to be a black revolver. Worried that Maxstadt would open fire,
6   that CHP officer served out of the way. The CHP officer reported hearing two gunshots as he
7   swerved. Eventually, Maxstadt pulled over and fled on foot. Officers ultimately found Maxstadt
8   hiding in a nearby creek, where they took him into custody.

In the subsequent investigation, officers searched Maxstadt's Kia and discovered an unzipped gun case that could hold a mid-sized revolver. However, officers did not find a firearm and did not recover any ballistics evidence. Further, no other officer reported hearing gunshots or seeing muzzle flashes, although a video recording from the lead CHP officer's vehicle appeared to show two flashes and two "popping sounds."

**B.  Procedural History**

In June 2017, prosecutors charged Maxstadt with five felonies: attempted murder of a peace officer; assault with a firearm on a peace officer; possession of a firearm by a felon; reckless driving while evading a peace officer; and unlawful use of a motor vehicle. 1 CT 65–68.[2] Maxstadt pled guilty to the latter two counts and proceeded to trial on the first three counts. At trial, the jury convicted Maxstadt of assault with a firearm and possession of a firearm as a felon but deadlocked on the attempted murder count. The state trial court declared a mistrial as to attempted murder, and prosecutors retried Maxstadt on that count. A second jury found Maxstadt guilty of attempted murder following the retrial. The trial court then sentenced Maxstadt to a total term of 38 years and eight months to life.

Maxstadt appealed his attempted murder conviction. In his direct appeal, Maxstadt raised two arguments relevant to his federal habeas petition. First, he argued that there was insufficient

---

[2] The Court cites to the Clerk's Transcript (filed at ECF Nos. 20-1 to -2) as [Volume] CT [Page]. The Court likewise cites to the Reporter's Transcript (filed at ECF Nos. 20-3 to -25) as [Volume] RT [Page].

Case No.: 5:20-cv-08059-EJD
ORDER DEN. PETITION                 2

1  evidence of intent to kill. Second, he argued that the trial court gave a faulty jury instruction that

2  collapsed the mens rea and actus reus elements for attempted murder into a single element. The

3  state appeals court rejected both arguments, *Maxstadt*, 2019 WL 1970162, at *2–5, and the state

4  supreme court denied review.

5        Following his direct appeal, Maxstadt simultaneously filed habeas petitions in state and

6  federal court. Maxstadt's federal petition—the subject of this Order—was originally assigned to

7  Magistrate Judge Robert Illman. Maxstadt requested a stay of his federal petition while he

8  continued to exhaust his remedies through state habeas proceedings, Mot. to Stay, ECF No. 2, and

9  Judge Illman granted that motion. Order Granting Stay, ECF No. 6.

10       In his state habeas proceedings, Maxstadt raised two claims for relief. First, Maxstadt

11 argued that his trial counsel provided ineffective assistance for five reasons: (1) trial counsel failed

12 to retain a gunshot residue expert; (2) trial counsel failed to move for a venue transfer; (3) trial

13 counsel failed to excuse at least one juror who was friends with the district attorney; (4) trial

14 counsel failed to challenge a sentencing enhancement; and (5) trial counsel wrongly conceded that

15 Maxstadt discharged a firearm. Second, Maxstadt claimed that he was actually innocent.

16       The state trial court rejected both of Maxstadt's claims in a brief, but explained, opinion.

17 Maxstadt then filed a habeas petition raising the same claims in the state appeals court. The state

18 appeals court summarily denied relief in a largely unexplained decision, although the appeals court

19 cited cases suggesting that Maxstadt's ineffective assistance allegations were too conclusory to

20 warrant relief. Finally, Maxstadt filed a habeas petition with the state supreme court, again raising

21 the same claims. The state supreme court denied relief as well, in a decision much like the state

22 appeals court's.

23       Once the state supreme court denied relief, Judge Illman lifted the stay on Maxstadt's

24 federal habeas petition and ordered the state to respond to the petition. Order Lifting Stay, ECF

25 No. 12; Order to Show Cause, ECF No. 13. Respondent Jason Pickett (the "Warden") answered,

26 and Maxstadt filed a traverse. Answer, ECF No. 19; Traverse, ECF No. 25. Because the Warden

27 declined magistrate judge jurisdiction, Maxstadt's habeas petition was reassigned to this Court.

28

Case No.: 5:20-cv-08059-EJD
ORDER DEN. PETITION      3

## II. LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs federal habeas petitions for relief from a state conviction. As relevant here, AEDPA requires a petitioner to show that her state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). This is a "highly deferential" standard of review. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). A state decision is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state decision is an "unreasonable application" of clearly established federal law only if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* An unreasonable state decision must be more than "merely wrong." *White v. Woodall*, 572 U.S. 415, 419 (2014). Rather, a state decision is unreasonable only when it is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

In assessing whether the state courts reached a decision that is contrary to or an unreasonable application of federal law, federal courts typically "look through" any unexplained state-court decisions to "the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). In doing so, the federal courts "presume that the unexplained decision[s] adopted the same reasoning" as the last explained decision. *Id.* However, this approach is only a presumption, not an absolute rule. States can rebut this presumption "by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision." *Id.* at 125–26.

### III. DISCUSSION

#### A. Ineffective Assistance of Trial Counsel

Criminal defendants have the right to effective assistance of counsel under the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show that counsel was constitutionally deficient, a defendant must satisfy the two-part *Strickland* test. First, the defendant must show deficient performance, meaning that her "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. When assessing counsel's performance for deficiency, "substantial deference must be accorded to counsel's judgment." *Premo v. Moore*, 562 U.S. 115, 126 (2011). Thus, courts start from the presumption that counsel's challenged actions "might be considered sound trial strategy." *United States v. Juliano*, 12 F.4th 937, 940 (9th Cir. 2021). Second, the defendant must show that the deficient performance prejudiced her defense. *Strickland*, 466 U.S. at 687. That is, the defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. This probability "must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

When federal courts conduct habeas review of state court decisions, the already deferential *Strickland* test becomes "doubly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (citation omitted). Not only does the state court defer to counsel's trial judgment when applying *Strickland*, the federal court must also defer to the state court's judgment when applying AEDPA review. *Id.*

##### 1. Failure to Retain Gunshot Residue Expert

Maxstadt begins by arguing that his trial counsel was ineffective for failing to retain a gunshot residue expert. According to Maxstadt, had his trial counsel called such an expert at trial, that expert's testimony would have shown an absence of gunshot residue. In turn, that testimony would support the defense that Maxstadt did not shoot at officers during the car chase in question. Petition, Attach. A ("Mem.") 7–8. However, trial counsel's decision not to call a gunshot residue expert is not constitutionally deficient either on de novo review or AEDPA's deferential review.

1    To analyze *Strickland*'s first prong (deficiency), the Court starts from the premise that
2    "[t]he choice of what type of expert to use is one of trial strategy and deserves a heavy measure of
3    deference." *Leavitt v. Arave*, 682 F.3d 1138, 1140–41 (9th Cir. 2012) (quoting *Turner v.
4    Calderon*, 281 F.3d 851, 876 (9th Cir. 2002)) (internal quotation marks omitted).  One scenario
5    where it would be reasonable for defense counsel not to call an expert is when that proposed
6    expert would have done little more than corroborate the state's evidence.  *Id.* at 1141.  That is the
7    case here.  Even though the defense did not call a gunshot residue expert, the state did.  And the
8    state's gunshot residue expert testified that there was only a single particle of gunshot residue
9    found on Maxstadt's person.  15 RT 313.  Given the state expert's testimony, there would be little
10   benefit to calling a defense gunshot residue expert.  At best, the defense expert might find that
11   there were no gunshot residue particles on Maxstadt.  But the difference between one particle and
12   no particles is slight, and the state provided a ready explanation for why there might be little to no
13   gunshot residue on Maxstadt—the police found Maxstadt submerged in a creek, which could have
14   washed any gunshot residue off his hands.  13 RT 213–14, 315, 317.  Further, it would have been
15   a risk to retain a defense gunshot residue expert because that expert could have found *more*
16   gunshot residue, therefore *undermining* Maxstadt's defense.  Given this poor risk-reward tradeoff,
17   Maxstadt's counsel could have reasonably determined that retaining a defense gunshot residue
18   expert had little upside.  *See Harrington*, 562 U.S. at 108 (defense counsel need not pursue trial
19   strategies that carry serious risks of harm to the defense).

20   For similar reasons, Maxstadt's ineffective assistance claim fails to clear *Strickland*'s
21   prejudice prong.  Because the state already had an explanation for the lack of gunshot residue
22   evidence, Maxstadt fails to show a substantial probability that a retaining a gunshot residue expert
23   would have changed the outcome of his trials.  At the very least, it was reasonable for the state
24   trial court to conclude, in the last reasoned state decision, that Maxstadt "has not presented any
25   evidence of prejudice."  State Habeas Decision 76, ECF No. 20-33.[3]

---

[3] Pin citations to ECF No. 20-33 and the State Habeas Decision are to the printed pagination at the bottom right corner of each page.

Case No.:  5:20-cv-08059-EJD
ORDER DEN. PETITION                6

1     Accordingly, the Court DENIES this first subclaim for ineffective assistance.

### 2. Failure to Move for Change of Venue

Next, Maxstadt asserts that his trial counsel provided ineffective assistance by not moving for a venue change despite allegedly "inflammatory and prejudicial pretrial publicity." Mem. 18–20. As the state trial court held though, Maxstadt never presented evidence showing that a venue change was necessary, State Habeas Decision 76, so Maxstadt did not show prejudice from his trial counsel's failure to request a venue change.

When deciding a venue change motion, California courts consider "the gravity and nature of the crime or crimes, the extent and nature of the pretrial publicity, the size and nature of the community, the status of the victim, the status of the accused, and any indication from the voir dire of prospective and actual jurors that the publicity did in fact have a prejudicial effect." *Bolin v. Davis*, 13 F.4th 797, 808 (9th Cir. 2021) (quoting *People v. Coleman*, 48 Cal. 3d 112, 133 (1989)). The state trial court reasonably observed that the size of Mendocino County (the relevant community) weighed against transfer because Mendocino was large. State Habeas Decision 76. The state trial court also reasonably found that Maxstadt failed to substantiate his allegations that there was extensive pretrial publicity because Maxstadt failed to present evidence to that effect. *Id.* This Court further observes that the record contains no suggestion that voir dire revealed pretrial publicity actually prejudiced the jury. These considerations are sufficient to uphold the state courts' determination.

Although Maxstadt attached to his traverse three news articles that purportedly show extensive pretrial publicity, Traverse, Ex. A, those news articles do not support habeas relief. For one, the three articles by themselves are not evidence of extensive pretrial publicity. The number of articles is small, and Maxstadt does not offer any readership or circulation figures to show that the articles were widely disseminated. Even if Maxstadt's new evidence strongly supported an ineffective assistance of counsel claim, such a claim would still be barred. When a petitioner presents new facts in support of an ineffective assistance claim for the first time in federal habeas proceedings, and the new facts "place the case in a significantly different and stronger evidentiary

Case No.: 5:20-cv-08059-EJD
ORDER DEN. PETITION    7

1  posture than it was when the state courts considered it," that petitioner has failed to fairly present
2  her ineffective assistance claim to the state courts. *Dickens v. Ryan*, 740 F.3d 1302, 1318 (9th Cir.
3  2014) (quoting *Aiken v. Spalding*, 841 F.2d 881, 883 (9th Cir. 1988)). Therefore, to the extent
4  Maxstadt's new evidence strongly supports his claim, Maxstadt has failed to exhaust his claim.
5  *See id.* at 1319.
6  As a result, the Court DENIES Maxstadt's second subclaim for ineffective assistance as
7  well.

### 3. Failure to Strike Juror

Maxstadt also claims that his trial counsel rendered ineffective assistance by failing to strike "at least one juror" who was friends with the district attorney. Mem. 20–22. As the state courts recognized, though, Maxstadt failed to substantiate his allegation that jurors were friends with the district attorney. State Habeas Decision 76–77. Maxstadt has not offered any evidence showing such an alleged friendship. And Maxstadt has not pointed to anything in the record—nor has the Court found anything in the record—suggesting that such friendships existed. In the absence of evidence showing that any jurors were biased by friendships with the district attorney, the state courts reasonably concluded that Maxstadt's counsel was not ineffective for failing to strike those hypothetical jurors. *Burt v. Titlow*, 571 U.S. 12, 23 (2013) ("It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'") (quoting *Strickland*, 466 U.S. at 689) (alteration in original). So, the Court DENIES this third subclaim for ineffective assistance.

### 4. Failure to Challenge Sentencing Enhancement

Fourth, Maxstadt contends that his trial counsel was ineffective for failing to challenge the state trial court's application of the sentencing enhancement provided by California Penal Code § 12022.53(c). Mem. 22–23. That is simply not true. Maxstadt's trial counsel explicitly asked the state trial court to strike the § 12022.53(c) enhancement at sentencing:

> **The Court:** Okay. Thank you. Mr. Rhoades, want to submit or would you like to add anything?

> **Mr. Rhoades:** Well, only to state the obvious which is, Ryan is 28 years old. You know if you take that he did these things because a jury said he did these things and the report relates that, then you are still talking about a young man with no previous acts of violence. And it strikes me that rather than the 26-to-life, including the 12022.53, *that the punishment would be sufficient enough without that. I would ask the Court seriously to consider striking that one allegation.*

23 RT 1137–38 (emphasis added). Thus, it was reasonable for the state courts to reject this theory of ineffective assistance, and the Court DENIES Maxstadt's fourth ineffective assistance subclaim.

### 5. Wrongly Conceding Facts During Closing Argument

Finally, Maxstadt argues that his trial counsel was ineffective for conceding at closing, during Maxstadt's first trial, that Maxstadt possessed and discharged a gun. Mem. 24–25. Once again, the record does not bear out this criticism. Not once during closing arguments did Maxstadt's counsel concede that Maxstadt had fired a gun. 16 RT 514–24. To the contrary, Maxstadt's counsel spent the entirety of closing arguments casting doubt on whether Maxstadt had fired a gun. *Id.* The closest Maxstadt's counsel came to a concession was stating, "I believe Officer Lewis believes that he heard a [gunshot]." 16 RT 516; *see also* 16 RT 519 (similar). But Maxstadt's counsel made that statement in the context of arguing that, even though the officer believed there were gunshots, the jury did not have to believe the officer. 16 RT 516. Indeed, immediately after making that statement, Maxstadt's counsel pointed to discrepancies in the evidence that undermined the officer's testimony. *Id.* Because Maxstadt's counsel did not concede that Maxstadt had fired a gun, the Court DENIES this final ineffective assistance subclaim.

### B. Sufficiency of the Evidence

Like federal habeas review of ineffective assistance claims, federal habeas review of sufficiency of the evidence claims is doubly deferential. *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011). First, the state courts can grant relief only when "'no rational trier of fact' could have found the elements necessary for guilt satisfied beyond a reasonable doubt." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)). In performing this "rational trier of fact"

Case No.: 5:20-cv-08059-EJD
ORDER DEN. PETITION          9

1  assessment, the state courts must deferentially "view[] the evidence in the light most favorable to
2  the prosecution." *Jackson*, 443 U.S. at 319. Second, this Court then defers to the state courts
3  under AEDPA, meaning that this Court may not grant habeas relief unless the state courts acted
4  unreasonably. *Boyer*, 659 F.3d at 964–65.

Maxstadt argues that there was insufficient evidence as to only a single element of his attempted murder conviction: specific intent to kill. Mem. 11–15. The state appellate court rejected this argument, explaining that under California law, a reasonable jury could infer intent to kill from the act of firing a gun towards a victim at close range. *Maxstadt*, 2019 WL 1970162, at *3. That was reasonable. There is ample evidence in the record from which a rational jury could find that Maxstadt fired his gun at pursuing officers. For example, prosecutors presented eyewitness testimony that Maxstadt fired his gun, video evidence showing the same, and a gun case that was recovered from Maxstadt's vehicle. 21 RT 712–23, 738–39, 742–45, 774–76, 783, 787–88. Taken in the light most favorable to the prosecution, a rational jury could well have found that Maxstadt fired his gun. From there, given California law that permitted jurors to infer intent to kill, *People v. Houston*, 54 Cal. 4th 1186, 1218 (2012) ("The act of shooting a firearm toward a victim at close range in a manner that could have inflicted a mortal wound had the shot been on target is sufficient to support an inference of an intent to kill."), it was reasonable for the state appellate court to conclude that the jury could make that inference. Therefore, the Court DENIES Maxstadt's sufficiency of the evidence claim.

### C. Jury Instructions

Usually, claims that a state trial court issued defective jury instructions under state law are not cognizable in federal habeas proceedings. *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991). It is only when "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process" that defective instructions can rise to the level of a federal habeas claim. *Id.* at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). When analyzing whether instructional error clears that high bar and therefore justifies federal habeas relief, courts must consider the challenged instruction "in the context of the instructions as a whole and the trial

record." *Id.* Federal habeas relief is warranted only if, after the challenged instruction is placed in that context, "'there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Id.* (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).

Here, Maxstadt challenges the state trial court's use of CALCRIM No. 600, which instructs the jury on the elements of attempted murder. Mem. 15–17. The instruction reads as follows, with the specific language that Maxstadt takes issue with italicized:

> The defendant is charged in Count One with attempted murder.
>
> To prove that the defendant is guilty of attempted murder, the People must prove that:
>
> 1. The defendant took at least one direct but ineffective step toward killing another person;
>
> AND
>
> 2. The defendant intended to kill that person.
>
> A direct step requires more than merely planning or preparing to commit murder or obtaining or arranging for something needed to commit murder. A direct step is one that goes beyond planning or preparation and shows that a person is putting his or her plan into action. *A direct step indicates a definite and unambiguous intent to kill.* It is a direct movement toward the commission of the crime after preparations are made. It is an immediate step that puts the plan in motion so that the plan would have been completed if some circumstance outside the plan had not interrupted the attempt.
>
> A person who attempts to commit murder is guilty of attempted murder even if, after taking a direct step toward killing, he abandons further efforts to complete the crime, or his attempt fails or is interrupted by someone or something beyond his control. On the other hand, if a person freely and voluntarily abandons his plans before taking a direct step toward committing the murder, then that person is not guilty of attempted murder.

2 CT 241 (emphasis added). From Maxstadt's perspective, the italicized language collapses the two elements of attempted murder—the direct step and intent—into one. Mem. 17. This, Maxstadt says, allowed the jury to convict him without finding both elements of attempted murder separately. *Id.* Ostensibly, Maxstadt believes that this would violate the constitutional requirement that the jury find every element of the crime to be established by proof beyond a

Case No.: 5:20-cv-08059-EJD
ORDER DEN. PETITION    11

reasonable doubt.  *See Sullivan v. Louisiana*, 508 U.S. 275, 277–78 (1993).

The state appellate court disagreed, explaining that when CALCRIM No. 600 is "'considered in context, . . . there is no reasonable likelihood jurors understood it' as collapsing the two elements of attempted murder." *Maxstadt*, 2019 WL 1970162, at *5 (quoting *People v. Lawrence*, 177 Cal. App. 4th 547, 557 (2009)).  That was a reasonable conclusion for the state appellate court to reach.  Notwithstanding the italicized language, CALCRIM No. 600 explicitly states that there are two elements and that those elements are separate.  Elsewhere in the instructions, the state trial court also emphasized that act and intent are separate elements, instructing the jury that "[t]he People must prove not only that the defendant did the act or acts charged but also that he acted with a particular intent or a mental state."  22 RT 1018.  Similarly, the state trial court instructed that, to return a guilty verdict, the jury must find not only that the defendant "intentionally committed the prohibited act but did so with the specific intent or mental state."  22 RT 1021.  Altogether, the instructions were clear enough that, applying the lens of AEDPA deference, there is no reasonable likelihood that the jury applied CALCRIM No. 600 in a way that collapsed the elements of attempted murder.  As such, the Court DENIES Maxstadt's jury instruction claim.

### D.  Actual Innocence

As a matter of federal habeas law, "[i]t is still an open question as to whether a petitioner 'may be entitled to habeas relief based on a freestanding claim of actual innocence.'"  *Taylor v. Beard*, 811 F.3d 326, 334 (9th Cir. 2016) (en banc) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013)).  But even if such claims were allowed, they would need to be based on "new reliable evidence that was not presented at trial," and the petitioner would need to "show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt."  *Ruvalcaba v. Ratelle*, 18 F. App'x 658, 660 (9th Cir. 2001) (alteration in original) (quoting *Schlup v. Delo*, 513 U.S. 298, 299, 327–28 (1995)).  Maxstadt does not offer new evidence at all.  Instead, he points only to evidence already in the trial record, Mem. 9–10, essentially repackaging his sufficiency of the evidence claim as an actual innocence claim.

*Kennedy v. Madden*, No. CV 21-3869, 2021 WL 11134124, at *8 (C.D. Cal. Aug. 30, 2021), *report and recommendation adopted*, 2021 WL 11134125 (C.D. Cal. Oct. 29, 2021). Consequently, the Court DENIES Maxstadt's actual innocence claim.

### E.     Evidentiary Hearing

Maxstadt also summarily requests an evidentiary hearing without providing any grounds for holding such a hearing. The Court DENIES this unsupported request.

## IV.     CONCLUSION

For the reasons above, the Court DENIES Maxstadt's petition for a writ of habeas corpus. No certificate of appealability shall issue, because reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**IT IS SO ORDERED.**

Dated: October 1, 2024

EDWARD J. DAVILA
United States District Judge